**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JOHN P. YOUNG**
Young & Young
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT G. ZEIGLER**
**BOBBY J. AVERY-SEAGRAVE**
Zeigler Cohen & Koch
Indianapolis, Indiana

**FILED**

Jan 26 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RUTH DISHMAN, Personal Representative of the Estate of Julie A. Etchison, Deceased, ) ) ) | |
| Appellant-Plaintiff, ) | |
| ) | |
| vs. ) | No. 48A02-1105-PL-467 |
| ) | |
| COMMUNITY HOSPITALS OF INDIANA, INC., ) MEDCHECK ANDERSON, TROY ) ABBOTT, M.D., and STEPHEN ROBERTSON, ) Acting Commissioner of the Indiana Department ) of Insurance, ) ) | |
| Appellees-Defendants. ) | |

APPEAL FROM THE MADISON SUPERIOR COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48D03-1012-PL-4041

**January 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Ruth Dishman, as personal representative of the Estate of Julie A. Etchison (the Estate), appeals a grant of partial summary judgment in favor of Community Hospitals of Indiana, Inc., Medcheck Anderson, Dr. Troy Abbott, (collectively, the Medical Defendants) and Stephen Robertson, Acting Commissioner of the Indiana Department of Insurance, in conjunction with a proposed complaint for medical malpractice filed on behalf of the Estate. The Estate presents the following restated issue for review: Was Arianna Adams a "dependent next-of-kin" of Etchison within the meaning of Indiana's General Wrongful Death Statute (GWDS), i.e., Ind. Code Ann. § 34-23-1-1 (West, Westlaw current through end of 2011 1st Regular Sess.)?

We affirm.

The relevant facts are undisputed. Etchison was born in May 1956. She was married for a short time at some point during her twenties. Except for the duration of that marriage, perhaps two years, Etchison always lived in her parents' home. Etchison's father died in 1994 and Etchison thereafter lived in the home with her mother, Julia Reismiller. Chris Adams is Reismiller's grandson and Etchison's nephew. Adams, who was twenty-six or twenty-seven years old at the time this appeal was filed, fathered a child with Chastity Peyton. The two were married when the child, Arianna Adams, was born in August 2006. The couple separated, however, and sometime around the beginning of October 2006, Adams and Arianna moved into Reismiller's home. Eventually, Adams and Peyton divorced and Adams was awarded custody of Arianna. They continued to live in Reismiller's home. Reismiller died in September 2007, after which Etchison, Adams, and Arianna lived in the home.

2

Adams worked for Sparkle Cleaning from August 22, 2003 until he quit on October 31, 2008. He quit because he "had nobody to really help [him] take care of" Arianna. *Appellant's Appendix* at 30. Etchison died on July 24, 2009. During portions of the time between when Adams quit his employment and Etchison died, Adams received food stamps.

On May 6, 2010, the Estate filed a proposed complaint for damages alleging that Etchison's death was caused by negligent medical treatment rendered by the Medical Defendants. On December 15, 2010, the Medical Defendants filed a "Motion For Preliminary Determination of Law and for Partial Summary Judgment on the Issue of Damages Limited Under I.C. 34-23-1-2, on Behalf of Defendants, Community Hospitals of Indiana, Medcheck Anderson, and Troy Abbott, MD." *Id.* at 6. In their motion, the Medical Defendants argued that Arianna was not a dependent next-of-kin of Etchison's under the GWDS and therefore that the Estate is limited to recovery of damages for only medical, hospital, funeral, and burial expenses. The trial court agreed and on May 4, 2011, entered an order granting the Medical Defendants' motion for partial summary judgment.

The Estate contends the trial court erred in granting partial summary judgment in favor of the Medical Defendants. We review a summary judgment order *de novo*. *Neu v. Gibson*, 928 N.E.2d 556 (Ind. 2010). Considering only the facts supported by evidence designated to the trial court by the parties, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *see also Kovach v. Caligor Midwest*, 913 N.E.2d 193 (Ind. 2009). We will accept as true those facts alleged by the nonmoving party. *Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154 (Ind. 2005). Moreover, we construe all factual

3

inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Kovach v. Caligor Midwest*, 913 N.E.2d 193. The appellant bears the burden of demonstrating that the grant of summary judgment was erroneous. *W.S.K. v. M.H.S.B.,* 922 N.E.2d 671 (Ind. Ct. App. 2010). Finally,

> [a] grant of summary judgment may be affirmed upon any theory supported by the designated evidence. While the trial court here entered specific findings of fact and conclusions of law in its order granting summary judgment for the appellees, such findings and conclusions are not required and, while they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment.

*Gilbert v. Loogootee Realty, LLC*, 928 N.E.2d 625, 629 (Ind. Ct. App. 2010), *trans. denied*, (quoting *Van Kirk v. Miller*, 869 N.E.2d 534, 539-40 (Ind. Ct. App. 2007) (citations omitted), *trans. denied*).

The question in this case is whether Arianna is a "dependent next-of-kin" within the meaning of the GWDS. The parties agree that this question must be answered by application of a two-part test, i.e., the Estate must show "(1) a need or necessity of support on the part of the alleged dependent; and (2) actual contribution to such support by the deceased." *Terry v. Stephens*, 921 N.E.2d 516, 520 (Ind. Ct. App. 2010) *trans. denied*. For purposes of our analysis in this case, it appears that the Medical Defendants do not challenge the Estate's claim based upon the second element. That is, they do not dispute that Etchison actually contributed to Arianna's support while Adams and Arianna lived in Etchison's home. Rather, the basis of the Medical Defendants' motion centers upon the first element and the contention that Etchison's support of Arianna was not based upon need or necessity.

We note that although the evidence of record indicates Arianna's mother was

4

unreliable with respect to the payment of monetary support or the provision of nonmonetary support, Adams worked until Arianna was approximately two years old. He voluntarily left his employment, evidently to care for Arianna. It appears that this option was open to him primarily because he was able to continue living in Etchison's home and thereby minimize his living expenses. We can find no indication of record that Adams was disabled or for some other reason unable to work. Indeed, Adams admitted that during the relevant period of time, i.e., October 2008 until Etchison's death in July 2009, he looked for work, albeit unsuccessfully. It was fortuitous for Adams that he was able to stay with relatives during that period of time, as he coped with the responsibilities of providing and caring for his young daughter. This does not, however, transform Etchison's commendable generosity toward her nephew and his daughter into a legally cognizable expectation of support from her on Arianna's part.

We understand the GWDS does not require that the decedent must have been under a legal obligation to support the next of kin in order to establish dependency for purposes of its provisions. *See Estate of Sears ex rel. Sears v. Griffin*, 771 N.E.2d 1136 (Ind. 2002). There is no doubt that Arianna "depended" on Etchison, as she had previously depended upon Dishman,[1] in the everyday sense of the word, but it is the legal definition that matters here. *See id.* As our Supreme Court has noted, "Services must go beyond merely helping other

---

[1] The designated evidence reveals that for the first eight months after Adams and Peyton separated, a time during which Adams lived with Etchison, Adams signed over to Dishman temporary legal custody of Arianna. Like Etchison, Dishman was also Adams's aunt. Adams "got [Arianna] back" from Dishman in October 2008. *Appellant's Appendix* at 31. After that, Dishman was "a frequent visitor" at Etchison's house. *Id.* at 35. She occasionally watched Arianna for Adams, usually taking the child back to her (Dishman's) house on those occasions.

family members, even those who have relied on that assistance." *Id*. at 1139. They must also "be more than just a service or benefit to which the claimed dependent had become accustomed." *Id*.

In the instant case, Etchison helped Adams and Arianna during a time of need by permitting them to stay in her home while he was temporarily unemployed and looking for a job. It appears this arrangement was precipitated not so much by necessity as by convenience. The opportunity to live in Etchison's home afforded Adams the freedom to quit his job to look for one that presumably paid better. Moreover, we must not lose sight of the fact that in this situation, Arianna was *Adams's* dependent next of kin and it was his responsibility, both moral and legal, to support her. We understand that Adams's needs at the time were real and pressing, and that Etchison helped him in his time of need. But while Arianna's dependency upon Adams was total and long-term, Adams's need for support from Etchison was temporary and not a function of the sort of dependency contemplated in the GWDS, either with respect to Adams or Arianna. Finally, we note with interest that less than two years after Etchison's death, Adams had married Sara Neal, secured employment, and he and his family, including Arianna, were living independently without assistance from family members.

In summary, the facts of this case failed to establish dependency for purposes of the GWDS based upon financial support and services provided by Etchison that Adams was capable of providing, and indeed has been providing since Etchison's death.

Judgment affirmed.

RILEY, J., and MATHIAS, J., concur.

6